## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TERRENCE EDWARD HAMMOCK,

    Plaintiff,

    v.                                                          Civil Action No.:  DLB-21-796

GAIL WATTS,
OFFICER DUPRE,
OFFICER WATSON,
SGT. BOND,
OFFICER WESTCOTT,
ROYAL QUINN,
OFFICER ANDO,

    Defendants.

## MEMORANDUM OPINION

On August 9, 2021, this Court ordered counsel for defendants Watts, Dupre, Watson, Bond, Westcott, and Ando to show cause why injunctive relief should not be granted in favor of plaintiff Terrence Edward Hammock, who complained that defendants were withholding medical treatment.  ECF 19; *see* ECF 16 (plaintiff's letter request for relief).  Defendants filed a response on August 17, 2021 asserting that Hammock is receiving medical care for the injury to his eye he sustained when he was assaulted by his cellmate, Royal Quinn.  ECF 21.  On August 23, 2021, Hammock filed a reply, which was erroneously docketed as a supplement to his pending Motion to Appoint Counsel.  ECF 22.  On September 2, 2021, Hammock reiterated his complaints.  ECF 24.  Having considered the allegations by both parties, and for the reasons set forth below, Hammock's motions to appoint counsel, ECF 20, 22-1, 26, shall be denied without prejudice, and injunctive relief shall be denied.

## I.       Motion to Appoint Counsel

In his initial motion to appoint counsel, Hammock offers no grounds for the motion but cites the Sixth Amendment.  ECF 20; *see also* ECF 22-1, 26.  The Sixth Amendment guarantees the right to counsel in criminal cases, not in civil cases such as this one.  In civil cases, a federal district court judge has the discretion under 28 U.S.C. § 1915(e)(1) to appoint counsel, but only if an indigent claimant presents exceptional circumstances.  *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). In his motions, Hammock does not identify any exceptional circumstances.  At this early stage of the case, the Court cannot determine whether discovery or a hearing will be necessary to resolve this case.  If Hammock needs additional time to file pleadings, he may request an extension of time, which the Court typically grants.  Additionally, the Court must liberally construe all pleadings filed by *pro se* parties.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Thus, having found no exceptional circumstances warranting appointment of counsel, the motions are denied without prejudice.

## II.      Factual Background

The parties agree that Hammock was involved in a fight with his cellmate at the Baltimore County Detention Center (BCDC) on March 8, 2021.  ECF 1, at 2; ECF 21-1, at 1.  The medical record prepared at 10:15 a.m., the time Hammock arrived at the medical unit, indicates that he had a "minor scratch" at the "left hand corner of his eye" with "no swelling, or bleeding noted."  ECF 21-1, at 1.  Hammock disputes this account and claims that immediately following the assault, his eye was swollen shut and his eye and his nose were bleeding.  ECF 22, at 1.  A medical note documenting Hammock's return to the medical unit at 1:10 p.m. describes Hammock's wounds as "periorbital swelling/bruise and left nasal bleeding."  ECF 21-1, at 2.  At that time, it was decided that Hammock should be sent to the Johns Hopkins Hospital Wilmer Eye Clinic "via non emergent

transportation for further evaluation." *Id*.  Hammock does not dispute that he was sent to Wilmer for evaluation of his eye.  ECF 22, at 1.  Hammock was discharged from the Wilmer Eye Clinic Emergency Room on March 9, 2021 at 2:40 a.m., after he was diagnosed with a closed fracture of the left eye orbit.  ECF 21-1, at 2.

On March 10, 2021, Hammock was taken to Wilmer for a follow-up appointment.  ECF 21-1, at 2.  When Hammock returned to BCDC, he requested eyeglasses.  *Id*.  The nurse practitioner at BCDC who saw Hammock noted that Wilmer had reported that Hammock's vision was stable, his intra-ocular pressure was "under control" and he had been diagnosed with microhyphema.  *Id*.  Wilmer's treatment plan was for Hammock to continue to take prednisone for four days and to administer eye drops to his left eye twice per day.  *Id*.  Hammock's assertion that providers at Wilmer told him he needed glasses is unsupported by any objective evidence.  *See* ECF 22, at 3 ("John[s] Hopkin[s] Doctors said I need glasses.").  Nor has Hammock provided any support for his assertion that he was told he needed eye surgery.  *Id*. at 1.

On March 16, 2021, Hammock again returned to the Wilmer Eye Clinic for a follow-up evaluation.  ECF 21-1, at 3.  At that time Hammock's left eye was no longer swollen, and he was told to discontinue use of the eye drops he was given.  *Id*.  Hammock reported to BCDC medical staff that he was still experiencing pain in his eye, which he rated a 6 on a scale of 1 to 10.  *Id*.

On March 18, 2021, Hammock reported to BCDC's medical unit with complaints of swelling in his left eyelid.  ECF 21-1, at 4.  Hammock was diagnosed with pink eye and eye drops were ordered to treat it.  *Id*.

On April 5, 2021, Hammock complained to BCDC medical staff that his left eye was painful.  ECF 21-1, at 4.  Medical staff noted Hammock was in no acute distress and diagnosed

allergic conjunctivitis as the cause for his discomfort.  *Id*.  He was prescribed an antihistamine and advised to apply cold compresses to his eyes two to three times a day.  *Id*. at 5.

According to medical reports dated June 29, July 16, July 22, and August 4, 2021, Hammock did not report any complaints related to his left eye.  ECF 21-1, at 7–8.  Hammock takes issue with these records, stating that on August 8, 2021 he reported to BCDC medical staff that he was "seeing red" and was experiencing pain in his left eye, but they did nothing.  ECF 22, at 3.

### III.    Injunctive Relief

Injunctive relief "is a drastic and extraordinary remedy, which should not be granted as a matter of course."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).  A plaintiff seeking such relief must meet "a high bar" by "[s]atisfying . . . four factors."  *SAS Institute, Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017).  The plaintiff must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009) (discussing *Winter* factors).  The "'irreparable harm' must be 'neither remote nor speculative, but actual and imminent."  *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)).

When a prisoner seeks injunctive relief that would affect the management of a correctional institution, the Court should grant the request only under extraordinary and compelling circumstances, "so as not to assume the role of prison administrators."  *See Taylor v. Freeman*, 34 F.3d 266, 269–70 & n.2 (4th Cir. 1994).  Additionally,

> [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be

> the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in [18 U.S.C. § 3626(a)] (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under [18 U.S.C. § 3626] (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. § 3626(a)(2) (permitting court to "enter a temporary restraining order or an order for preliminary injunctive relief" in a "civil action with respect to prison conditions").

Hammock's request for injunctive relief must be denied because he fails to demonstrate a likelihood of success on the merits of his medical claim.

Under the Eight Amendment, the government must "provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Any "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The protections afforded convicted, prisoned individuals under the Eighth Amendment extend to pretrial detainees like Hammock through the Due Process Clause of the Fourteenth Amendment. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983)). Accordingly, "deliberate indifference to the serious medical needs of a pretrial detainee violates the Due Process Clause." *Id.*; *see also County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (concluding that, because "deliberately indifferent conduct" is sufficient for liability under the Eighth Amendment, it "must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial").

To prevail on his claim based on the alleged denial of medical care, Hammock must establish that defendants' actions or their failure to act amounted to "deliberate indifference to

serious medical needs." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).  Indisputably, Hammock's orbital fracture is a serious medical need that satisfies the objective prong of an Eighth Amendment claim.  However, the BCDC medical staff responded reasonably to address Hammock's injury.  The medical staff sent him to a world-renowned eye clinic where he was assessed and given medication.  While Hammock may believe that he needs glasses and surgery to treat his injury, there is no objective evidence that BCDC staff have been informed that he needs glasses or surgery and have ignored those needs.  Where, as here, defendants have taken the steps necessary to ensure the serious medical need is treated and the plaintiff simply disagrees about what treatment he should have received, the plaintiff has not asserted a constitutional violation.  *See Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) ("Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result.").

Because Hammock cannot prove a likelihood of success on the merits of his claim and because the evidence indicates he has received adequate medical treatment, the Court will not issue a preliminary injunction.

Left undecided is Hammock's claim that his cellmate assaulted him because defendants ignored his warnings and pleas to be separated from his assailant.

September 23, 2021
Date

_____
Deborah L. Boardman
United States District Judge