IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERRENCE EDWARD HAMMOCK,

   Plaintiff,

   v.

GAIL WATTS,
SERGEANT ANTHONY DUPREE,
OFFICER KEVIN WATSON,
SGT. TRAVIS BOND,
OFFICER HENRY WESTCOTT,
OFFICER PHILLIP ANDOH,

   Defendants.

Civil Action No.: DLB-21-796

**MEMORANDUM**

    Terrence Edward Hammock, a pretrial detainee confined to Baltimore County Detention Center ("BCDC"), filed a civil rights complaint against defendants Gail Watts, Sergeant Anthony Dupree, Officer Kevin Watson, Sergeant Travis Bond, Officer Henry Westcott, and Officer Phillip Andoh after Hammock was injured in an altercation with his cellmate.[1] ECF 1. He claims defendants violated his constitutional rights in two respects. First, he claims they failed to protect him from substantial risk of serious injury by denying his request to be separated from his cellmate whom he claims posed a threat to him. Second, he claims defendants were deliberately indifferent to his serious medical needs. Defendants filed a motion to dismiss or for summary judgment. ECF 23. Mr. Hammock opposes the motion (ECF 27, 28, 29, 34, 36, 37, 38, 40), asks the Court to reconsider its order denying him injunctive relief in connection with the medical care he believes he should have received, ECF 39, and moves for counsel to be appointed (ECF 35, 45). No hearing

---

[1] The Clerk shall amend the docket to reflect the full and correct spelling of defendants' names as reflected in the caption of this memorandum.

is necessary to address the pending matters.  *See* Loc. R. 105.6 (D. Md. 2021).  For the following reasons, defendants' motion, construed as one for summary judgment, shall be granted in part and denied in part.  Plaintiff's motions to appoint counsel and for reconsideration shall be denied.

**I.      Summary Judgment Motion**

   **A.  Factual Background**

It is undisputed that Hammock and his cellmate, Royal Quinn, fought inside their cell on March 8, 2021.  Hammock alleges that Quinn assaulted him and injured him by punching him in the eye "real hard."  ECF 1, at 2–3.  He claims the assault occurred because defendants ignored his requests to be moved to another cell after he told them that he was not getting along with Quinn.  *Id.*  According to Hammock, their conflict stemmed from Quinn being "disrespectful" by "smoking weed [and] cigarettes in the cell," which triggered Hammock's asthma and required Hammock to have breathing treatments.  *Id.* at 3.  Hammock alleges that he and his other cellmate, Benjamin Bunn, reported to the correctional officers that Quinn hit him first.  *Id.* at 3.

In a verified filing, Hammock states he told defendants before the assault that he wanted to move to another cell because his life was in danger and Quinn's cigarette smoking posed a threat to him.  ECF 34.  He asserts that he wrote to Director Watts about the conflict with Quinn and told Officer Andoh when Andoh escorted him to the medical unit for a breathing treatment that he feared for his life if he remained in a cell with Quinn.  *Id.*  Hammock insists that Andoh promised to take him to speak with a supervisor about Quinn, but Andoh's shift ended soon after that and he

never took Hammock to speak with a supervisor. *Id*. Hammock states that Quinn was a "known trouble maker" who had assaulted another inmate and that defendants knew Quinn's history. *Id*.[2]

Hammock filed with the Court two inmate request forms ("Form 118") that he claims show that he informed defendants before the assault that Quinn posed a threat to him. ECF 37-1. In a February 25, 2021 Form 118 addressed to Director Watts, Hammock stated that Quinn's smoking aggravated his asthma and that he fears for his life. ECF 37-1, at 3. He also stated that he had shared his concerns with Sergeant Bond. *Id.* at 4. In a March 1, 2021 Form 118 addressed to Sergeant Bond, Hammock raised concerns about Quinn's smoking and his personal safety. *Id.* at 5. In an October 22, 2021 filing, Hammock states that he "file[s] everything and keep[s] copies of the 118's [he] already filed." ECF 40. The October 22 filing was unverified, however, and Hammock has not provided any evidence that he presented the February 25 and March 1 Forms 118 to the defendants or that they received the forms. *See* ECF 37.[3]

---

[2] In another verified filing, Hammock asserts that he still has "red, blurred vision" in his right eye from the assault and, on October 6, 2021, Officer Westcott refused his request for eye treatment because Hammock "filed a lawsuit against [him]." ECF 38. Hammock seeks an order from this Court that requires Director Gail Watts to remove Westcott from his assignment to the protective custody housing unit. *Id*. Hammock does not explain why an officer would have to call medical for him when detainees typically send requests directly to medical. In any event, the filing is a new claim against Westcott unrelated to the pending matter and based on an incident that occurred after the Court's most recent order. Hammock does not include sufficient information in the two-page filing for the Court to discern if he has stated a viable claim. The claim shall be dismissed without prejudice. Hammock may file a new complaint concerning this incident if he has a good faith basis to do so.

[3] Hammock also filed with the Court two forms dated after the assault. In a March 10, 2021 Form 118, signed two days after the assault, Hammock claimed "Ando[h] is liable for [Hammock] getting assaulted." *Id.* at 1. He recently submitted an October 12, 2021 Form 118, in which he stated again that he told defendants Bond, Andoh, and Westcott that he "feared for [his] life, and wanted to be moved to another cell way before the assault happen[ed] on 3-8-21." ECF 40-1. Neither of these forms, even if they were presented to the defendants, could have given them notice of the potential danger before the assault occurred.

Defendants tell a different story. Through sworn affidavits, they maintain that Hammock did not voice to them fears that Quinn posed a threat to his safety and did not request to be removed from the cell. ECF 23-8, ¶¶ 10–12 (Andoh Aff.); ECF 23-9, ¶¶ 11–12 (Bond Aff.); ECF 23-10, ¶ 8 (Dupree Aff.); ECF 23-11, ¶¶ 10–12 (Watson Aff.); ECF 23-12, ¶ 25 (Watts Aff.); ECF 23-13, ¶¶ 7, 11–12 (Westcott Aff.). Director Watts stated that "there is no record that Mr. Hammock verbally informed staff [or] submitted or requested a Form #118 to any Correctional Officer or Classification Officer." ECF 23-12, ¶ 25. Defendants insist that if Hammock told them his cellmate was threatening to harm him, he would have been removed from the cell to a safe location pursuant to BCDC policies. ECF 23-8, ¶¶ 11–14; ECF 23-9, ¶¶ 13–16; ECF 23-10, ¶¶ 15–17; ECF 23-11, ¶¶ 13–15; ECF 23-12, ¶ 26. At the hearing regarding the incident, Hammock did not state he had asked to be moved from the cell because he feared Quinn or Quinn threatened to harm him. ECF 23-2, at 2. He said that he had "been asking to be moved because [Quinn] is disrespectful, and his smoking was causing [Hammock's] asthma to flare up." *Id.* Defendants dispute the veracity of Hammock's claim that Quinn was smoking cigarettes or marijuana in the cell because the officers on the housing unit, who do frequent cell checks, would have seen or smelled the smoke through the cell door window. *See* ECF 23-10, ¶¶ 9–12.

### B. Standard of Review

Defendants filed a motion to dismiss or, in the alternative, motion for summary judgment. ECF 23. Defendants presented evidence with their motion, and Hammock verified one of his responses and presented evidence of his own. The Court has considered this evidence and therefore treats the pending motion as a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet their burden, defendants must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of their position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Hammock must identify more than a "scintilla of evidence" in support of his position to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 251. In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48) (emphasis in *Anderson*). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). But, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. If "a party fails to establish the existence of an element essential to that party's case" or "'the

5

record taken as a whole could not lead a rational trier of fact to find for the non-moving party,'" then summary judgment is proper. *Perkins*, 936 F.3d at 205 (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### C. Discussion

#### 1. Failure to Protect

Hammock claims defendants violated his constitutional rights when they failed to protect him from a substantial risk of serious injury. Under the Fourteenth Amendment's Due Process Clause, a pretrial detainee has a right not to be punished before being found guilty. *See Bell v. Wolfish*, 441 U.S. 520, 535 & nn.16–17 (1979); *see also Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). This includes the right to be protected by prison officials and correctional officers from a substantial risk of serious injury. *See Bell*, 441 U.S. at 535–36.

To prevail, the plaintiff must show that he suffered an objectively serious injury or objectively substantial risk of such injury and that the defendants knew of and disregarded the risk. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014); *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302–03 (4th Cir. 2004). The objective inquiry requires this Court to "assess whether society considers the risk that the [detainee] complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). "[N]ot every injury suffered by a [detainee] at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015).

Then, in a subjective inquiry, the Court determines whether the defendant "actually . . . perceived the risk" and actually "recognized that his actions were 'inappropriate in light of that

6

risk.'" *Parrish*, 372 F.3d at 303 (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)); *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).  "[C]onduct that amounts to 'deliberate indifference' . . . is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim." *Parrish*, 372 F.3d at 302 (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001)); *see Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (defendants' conduct or failure to act violates the Fourteenth Amendment when it "shocks the conscience").[4]  This is "a very high standard" that requires more than "a showing of mere negligence." *Parrish*, 372 F.3d at 302 (quoting *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)).  Of course, the defendant also must have failed to act or to modify his actions upon perceiving the risk.  *See Farmer*, 511 U.S. at 844; *Parrish*, 372 F.3d at 302–03.

The Court will assume, for purposes of the pending motion, that Hammock's life was in danger due to his conflict with his cellmate Quinn and that Hammock has established an objectively substantial risk of injury.  He has not, however, provided sufficient evidence that defendants Watts, Dupree, Watson, Bond, and Westcott were aware that he was in danger.  Defendants offer their sworn statements that Hammock did not notify them that he had any concern for his safety because of his conflict with Quinn and that they had no other basis for questioning his safety while he was housed with Quinn.  ECF 23-8, ¶¶ 10–12; ECF 23-9, ¶¶ 11–12; ECF 23-10, ¶ 8; ECF 23-11, ¶¶ 10–12; ECF 23-12, ¶ 25, ECF 23-13, ¶¶ 7, 11–12.  Further, Director Watts stated that there is no record of any verbal or written request from Hammock to move out of the cell he shared with Quinn because he feared for his life.  ECF 23-12, ¶ 25.  "The absence of business records can be used as evidence to prove the non-existence of such a record." *See In re*

---

[4] This is the same standard that applies to Eighth Amendment claims.  *Parrish*, 372 F.3d at 302 & n.11.

*Apex Exp. Corp.*, 190 F.3d 624, 635 (4th Cir. 1999) (citing Fed. R. Evid. 803(7)); *see also Farmer v. Lyons*, No. PWG-18-567, 2019 WL 3387997, at *2 (D. Md. July 26, 2019) (noting that "[t]he absence of . . . a record [of an inmate request] is evidence that Farmer failed to request a bottom bunk assignment slip from ECI" (citing Fed. R. Evid. 803(7) and 803(10)).  Hammock provides a verified statement that he told defendants he feared for his life because of Quinn and that he wrote to Director Watts about the problems he was having with Quinn. ECF 34.  Although his verified filing qualifies as evidence, these vague statements are insufficient to establish a genuine dispute of fact as to the defendants' knowledge of the danger.  *See Anderson*, 477 U.S. at 251.  Every defendant has stated they were not informed that Hammock feared for his life inside his cell.  And there is credible evidence that Hammock did not actually submit, and defendants did not receive, the two forms predating the assault that Hammock claims put them on notice.  On the record before the Court, no reasonable jury could believe Hammock's account of the facts.  *See Scott*, 550 U.S. at 380.  Without more than a scintilla of evidence that Hammock advised defendants Watts, Dupree, Watson, Bond, and Westcott that Quinn's presence in his cell presented a substantial risk of injury, the failure to protect claim against those defendants fails, and summary judgment will be granted in their favor.

      Hammock's failure to protect claim as to Officer Andoh survives summary judgment.  Hammock asserts in his verified response that he told Officer Andoh, while the officer escorted him to the medical unit for an asthma treatment, that Quinn's presence in his cell posed a threat of harm to him. ECF 34, at 1–2. Hammock recalls the escort took place at 10:30 p.m. and that Andoh told him he would take him to see a supervisor about the issue after Hammock was seen by medical staff.  *Id.* at 2.  Hammock states that Andoh changed his mind because his shift ended at 11 p.m. and he wanted to go home.  *Id.*  Andoh never took him to see a supervisor to report the problems

8

with Quinn. *Id*. Andoh did not file a reply to address these assertions. Thus, there is a genuine dispute of material fact as to whether Andoh knew about the substantial risk of injury that Hammock faced while he was detained in the same cell as Quinn. Summary judgment is denied without prejudice as to Andoh. Andoh shall respond to plaintiff's failure to protect claim.

### 2. *Failure to Provide Medical Care*

Hammock also claims defendants violated his constitutional rights when they denied him appropriate medical care for his eye injury. Under the Eight Amendment, the government must "provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Any "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The protections afforded convicted prisoners under the Eighth Amendment extend to pretrial detainees like Hammock through the Due Process Clause of the Fourteenth Amendment. *Young*, 238 F.3d at 575 (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983)). Accordingly, "deliberate indifference to the serious medical needs of a pretrial detainee violates the Due Process Clause." *Id.*; *see also Lewis*, 523 U.S. at 845–46 (concluding that, because "deliberately indifferent conduct" is sufficient for liability under the Eighth Amendment, it "must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial"). To prevail on this claim, Hammock must establish that he had serious medical needs, that defendants failed to get him treatment, and that such conduct amounted to "deliberate indifference to serious medical needs." *See Estelle*, 429 U.S. at 106; *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).

When the Court denied Hammock's motion for preliminary injunctive relief as to this claim, the Court observed that "Hammock's orbital fracture is a serious medical need that satisfies the objective prong of an Eighth Amendment claim." ECF 31, at 6. The Court did not find deliberate indifference, however, because the records showed "the BCDC medical staff responded reasonably to address Hammock's injury" and "he has received adequate medical treatment." *Id.* Specifically, "[t]he medical staff sent him to a world-renowned eye clinic where he was assessed and given medication," and there was "no objective evidence that BCDC staff have been informed that he needs glasses or surgery and have ignored those needs." *Id.*

Since the Court's denial of the preliminary injunction, Hammock has not presented any evidence to change the analysis. In fact, in a November 16, 2021 supplement to his pleading, Hammock stated he saw "an outside doctor" who ordered glasses for him on November 7, 2021. ECF 43. Thus, there is no genuine dispute of material fact as to whether the defendants have been deliberately indifferent to Hammock's serious medical needs. He has received and continues to receive treatment for his medical condition. Accordingly, defendants' motion for summary judgment on the claim for denial of medical care is granted.[5]

## II. Motions to Appoint Counsel

Hammock has made several requests for court-appointed counsel. A federal district court judge has the discretion under 28 U.S.C. § 1915(e)(1) to appoint counsel in civil cases, but only if

---

[5] In any event, even if the medical care was not adequate, Hammock cannot prevail on his claims against the defendants, none of whom was a medical provider. The defendants may be liable if they personally participated in denying Hammock medical care. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Alternatively, they may be liable if they supervised the medical provider, knew the provider's care was inadequate, responded to the provision of care in a way that showed deliberate indifference to or tacit authorization of the inadequate care, and their inaction caused the plaintiff's injury. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Hammock does not establish that any of the defendants personally participated in the care or supervised the medical providers.

an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The Court denied Hammock's earlier motions to appoint counsel because he had not identified any exceptional circumstances. ECF 31, 32. He still has not. Accordingly, the motions are denied without prejudice.

### III.  Motion for Reconsideration

Hammock also filed correspondence entitled "Pleadings," in which he states that this Court erred when it denied injunctive relief in connection with the medical care he believes he should have received for his eye injury. ECF 39, at 1, 3. He states that the doctors who treated him at Johns Hopkins Wilmer Eye Clinic told him he would need surgery for his eye "in the near future" and that his "vision is poor." *Id*. at 1. He claims the doctors at Johns Hopkins ordered officials at BCDC to give him a pair of glasses, but he has yet to receive any. *Id*.

The Court construes this filing as a Rule 54(b) motion for reconsideration of its September 23, 2021 order. *See* Fed. R. Civ. P. 54(b) (the Court may revise a non-final order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991). The Fourth Circuit has stated a standard for review of motions for reconsideration under Rules 59(e) and 60(b) but not Rule 54(b). Therefore, this Court typically relies on "these standards for guidance in considering such motions." *Cezair v. JPMorgan Chase Bank, N.A.*, No. DKC-13-2928, 2014 WL 4955535, at *1 (D. Md. Sept. 30, 2014)).

> A Rule 59(e) motion is discretionary. It need not be granted unless the district court finds that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice. By contrast, Rule 60(b) provides that a court may relieve a party from an adverse judgment if the party shows either:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect;

11

>   (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
>   (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
>   (4) the judgment is void;
>
>   (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
>   (6) any other reason that justifies relief.

*Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 411 (4th Cir. 2010) (quoting Fed. R. Civ. P. 60(b); internal citation omitted). A motion for reconsideration "may not be used to raise new arguments or present novel legal theories that could have been raised prior to judgment." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 404 (4th Cir. 1998).

Hammock has not established a basis for reconsideration. He does not identify any error in the ruling. Nor does he offer any new evidence that would change the Court's decision. The new information he does offer—that he recently saw an eye doctor who prescribed him glasses—bolsters the Court's finding that the defendants were not deliberately indifferent to his serious medical needs. Therefore, his motion for reconsideration is denied. *See Robinson*, 599 F.3d at 411; *Pac. Ins. Co.*, 148 F.3d at 404.

### IV.   Conclusion

For the reasons stated, defendants' motion, construed as one for summary judgment, is granted in part and denied in part. Hammock's motions to appoint counsel, ECF 35 and 45, and his motion for reconsideration of the September 23, 2021 order, ECF 39, are denied.

A separate order follows.

November 19, 2021                                        _____
Date                                                              Deborah L. Boardman
                                                                  United States District Judge