IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERRENCE EDWARD HAMMOCK, | * | |
| Plaintiff | * | |
| v. | * | Case No.: DLB-21-796 |
| OFFICER PHILLIP ANDOH, | * | |
| Defendant | * | |

**MEMORANDUM OPINION**

Terrence Edward Hammock, a pretrial detainee confined to Baltimore County Detention Center ("BCDC"), filed a civil rights complaint against the Warden and several correctional officers after he was injured in an altercation with his cellmate, Royal Quinn. ECF 1. The Court granted summary judgment to all defendants on Hammock's claim that they were deliberately indifferent to his serious medical needs. ECF 48 & 49. The Court also granted summary judgment to all defendants, except Officer Phillip Andoh, on Hammock's claim that they failed to protect him from substantial risk of serious injury by denying his request to be separated from Quinn, who Hammock claims posed a serious threat to him. *Id.* The Court denied summary judgment as to Officer Andoh because Hammock's verified response to the motion, to which Officer Andoh did not respond, created a genuine dispute of material fact as to whether Officer Andoh knew from his conversation with Hammock about the substantial risk of injury that Hammock faced while he was detained in the same cell as Quinn.

On April 12, 2022, Officer Andoh filed a response to the allegations against him, which the Court construes as a motion for summary judgment. ECF 54. Hammock filed an opposition, ECF 57, and several documents labeled "Pleadings" that reiterate the claims in his complaint, ECF 58–60, 65, 67–69. He also filed a motion for appointment of counsel, ECF 66, and included in

one of his documents a request for the Court's assistance in pressing charges against Officer Andoh and Quinn, ECF 67.[1]  A hearing is not necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons stated below, summary judgment is granted in favor of defendant Officer Andoh, plaintiff's motion for appointment of counsel is denied, plaintiff's request to press charges is denied, and the case is closed.

I. **Background**

It is undisputed that Hammock and his cellmate, Royal Quinn, fought inside their cell on March 8, 2021.[2]  Hammock alleges that Quinn hit him first and injured him by punching him in the eye "real hard."  ECF 1, at 2–3.  He was sent to the Johns Hopkins Hospital Wilmer Eye Clinic "via non emergent transportation for further evaluation" and diagnosed with a closed fracture of the left eye orbit.  ECF 23-4, at 2.

According to Hammock, the conflict between him and his cellmate stemmed from Quinn being "disrespectful" by "smoking weed [and] cigarettes in the cell," which triggered Hammock's asthma and required Hammock to have breathing treatments.  ECF 1, at 2–3; ECF 57, at 2.  Hammock offers evidence that, before the assault, he "informed Officer Ando[h] again" that Quinn's presence in his cell made him "fear for his life."  ECF 34, at 1–2.  At the time, Officer Andoh was escorting him to the medical unit for an asthma treatment.  *Id.*  He states that he told

---

[1] As a private citizen, Hammock does not have the "right to institute a criminal prosecution."  *See Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) (quoting *Linda R. v. Richard V.,* 410 U.S. 614, 619 (1973)).

[2] As evidence on summary judgment, the Court considers the statements Hammock made based on personal knowledge in his oppositions to defendants' dispositive motions.  ECF 34 & 57.  It is clear from Hammock's statements regarding the truthfulness of these filings that he intended for them to serve as declarations.  *See* ECF 34, at 6; ECF 57, at 1; *see also* Fed. R. Civ. P. 56(c)(4) ("[A] declaration used to . . . oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated[.]"); 28 U.S.C. § 1746.

Officer Andoh that "h[e] and his cellmate d[id] not get alon[g], that he want[ed] to be moved that night, that he wanted to see the supervisor about the matter and all the smoking." *Id.* Hammock further states more specifically that he told Officer Andoh that his "life was in danger and that [he] fear[ed] that [his] cellmate Royal Quinn would attack [him], because [they] had problems and didn't get alon[g]" and they "keep arguing." ECF 57, at 1, 2.

According to Hammock, Officer Andoh told him he would take him to see a supervisor about the issue after Hammock was seen by medical staff, but then Officer Andoh changed his mind and did not take him because his shift was about to end and he wanted to go home. *Id*. at 2; ECF 57, at 3. Hammock insists that, under the circumstances, he did not need to fill out a form to request to move cells because he told Officer Andoh he feared for his safety. ECF 57, at 4. Hammock asserts he had been moved to another cell on that basis alone in the past. *Id.*

Hammock also asserts that "all the Defendants know that inmate Royal Quinn is a known trouble maker" who is "always disrespecting correctional officers and other inmates" and who "stayed in fights with other inmates." ECF 34, at 4–5. He insists the defendants all knew Quinn's history of assaulting another inmate before he assaulted Hammock. *Id.* at 5. He states that an officer had to use mace on Quinn to stop the assault because Quinn was "out of control," and the other inmate, Bruce Ware, filed a § 1983 complaint based on the incident. *Id.* These statements cannot be considered on summary judgment, however, because Hammock has not shown that he has personal knowledge or competence to testify that all defendants, or Officer Andoh in particular, were aware of Quinn's alleged history of assault in prison. *See* Fed. R. Civ. P. 56(c)(4).

By affidavit, Officer Andoh states that he "recall[s] escorting Mr. Hammock to get medical treatment for asthma" but "do[es] not recall whether this occurred before or after Mr. Hammock's altercation with Royal Quinn." ECF 54-1, ¶ 6. Officer Andoh recalls that, as they were leaving

3

the elevator after the treatment, Hammock said he "wanted to speak to a supervisor." *Id.* ¶ 7. Officer Andoh contacted his supervisor, whose office was near the elevator. *Id.* The supervisor "asked Mr. Hammock what he wished to speak with him about and Mr. Hammock would not give an answer." *Id.* ¶ 8. Officer Andoh encouraged Hammock to speak, "but he refused." *Id.* ¶ 9.

Officer Andoh then escorted Hammock to his cell, and Hammock "entered his cell willingly" without ever "ask[ing] [Officer Andoh] to move him from his cell because he was not getting along with his cellmate or that he was in fear for his safety." *Id.* ¶ 11. Officer Andoh also states that Hammock never asked for or gave him a form requesting to be moved to another cell. *Id.* ¶ 12. Officer Andoh insists that, had Hammock suggested he was not getting along with his cellmate, Officer Andoh would have advised his supervisor and Hammock would have received a form to request a move. *Id.* ¶¶ 12–13. Additionally, Officer Andoh states that if Hammock had told him he feared for his safety, he "would have informed [his] supervisor and he would immediately be moved to safe temporary housing." *Id.* ¶ 14.

## II.     Standard of Review

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment.  *Id.* at 251.  The Court "should not weigh the evidence."  *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249).  However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper.  *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party."  *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III. Discussion

Hammock claims Officer Andoh violated his constitutional rights when he failed to protect him from a substantial risk of serious injury.  Under the Fourteenth Amendment's Due Process Clause, a pretrial detainee has a right not to be punished before being found guilty.  *See Bell v. Wolfish*, 441 U.S. 520, 535 & nn.16–17 (1979); *see also Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989).  This includes the right to be protected by prison officials and correctional officers from a substantial risk of serious injury.  *See Bell*, 441 U.S. at 535–36.

To prevail, the plaintiff must show that he suffered an objectively serious injury or objectively substantial risk of such injury and that the defendants knew of and disregarded the risk. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014); *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302–03 (4th Cir. 2004).  The objective inquiry requires this Court to "assess whether society considers the risk that the [detainee] complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk."  *Helling v.*

5

*McKinney*, 509 U.S. 25, 36 (1993). "[N]ot every injury suffered by a [detainee] at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015).

Then, in a subjective inquiry, the Court determines whether the defendant "actually . . . perceived the risk" and actually "recognized that his actions were 'inappropriate in light of that risk.'" *Parrish*, 372 F.3d at 303 (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)); *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). "[C]onduct that amounts to 'deliberate indifference' . . . is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim." *Parrish*, 372 F.3d at 302 (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001)); *see Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (defendants' conduct or failure to act violates the Fourteenth Amendment when it "shocks the conscience").[3] This is "a very high standard" that requires more than "a showing of mere negligence." *Parrish*, 372 F.3d at 302 (quoting *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)). Thus, "a prison official cannot be found liable under the Eighth [or Fourteenth] Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. The Supreme Court has delineated the difference between tort liability and liability for a constitutional violation:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. *See Prosser and Keeton* §§ 2, 34, pp. 6, 213–214; *see also* Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680; *United States v. Muniz,* 374 U.S. 150,

---

[3] This is the same standard that applies to Eighth Amendment claims. *Parrish*, 372 F.3d at 302 & n.11.

> 83 S.Ct. 1850 (1963).  But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837–38.  To prove deliberate indifference, a plaintiff may show "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it."  *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (quoting *Parrish*, 372 F.3d at 303 (alteration in original)).

Here, there is no dispute that Hammock's eye injury was objectively serious.  The issue is whether Hammock has submitted evidence that Officer Andoh knew of and disregarded an excessive risk that Quinn would assault him.  *See id.* at 837.  The answer is no.  When the record evidence is viewed in the light most favorable to Hammock, it shows, at most, that Officer Andoh knew from Hammock that Hammock believed his "life was in danger and that [he] fear[ed] that [his] cellmate Royal Quinn would attack [him], because [they] had problems and didn't get alon[g]" and they "keep arguing."  ECF 57, at 1, 2.  It also shows that Hammock informed Officer Andoh at least twice that he feared for his life when in his cell with Quinn.  ECF 34, at 1 (stating he "informed Officer Ando[h] again").  It further shows that Officer Andoh knew Hammock was having trouble with his asthma and "want[ed] to be moved [to another cell] that night, [and] that he wanted to see the supervisor about the matter and all the smoking."  ECF 34, at 1–2.

While there is certainly evidence of Hammock's fear, there is no evidence of its foundation.  Hammock offers no evidence that Quinn ever threatened to harm or previously physically assaulted him.  Nor is there evidence that Hammock told Officer Andoh that Quinn previously harmed or threatened to harm him.  *Cf. Cox v. Quinn*, 828 F.3d 227, 236, 239 (4th Cir. 2016) ("[A] prison official acts with deliberate indifference when he ignores repeated requests from a vulnerable inmate to be separated from a fellow inmate *who has issued violent threats* which the

7

aggressor will likely carry out in the absence of official intervention." (quoting *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003))) (emphasis added).  Hammock's statements that Officer Andoh knew Quinn was "a known trouble maker" who "always . . . [got] in fights with other inmates" cannot defeat summary judgment because, among other reasons, they are not based on Hammock's personal knowledge.  *See* Fed. R. Civ. P. 56(c)(4).  Thus, there is no evidence that Officer Andoh personally knew about Quinn's alleged repeated violent conduct in general or that he was aware of any threats of violence or previous acts of violence by Quinn against Hammock.  As a result, there is no evidence that Officer Andoh could have drawn an inference, based on Hammock's statements to him, that Quinn posed an excessive risk to Hammock's safety.  *See Rich v. Bruce*, 129 F.3d 336, 339 (4th Cir. 1997) (reversing bench verdict in plaintiff's favor on Eighth Amendment claim because even though defendant "knew, as a general matter" that the plaintiff "was at risk" from the inmate who assaulted him, there was no evidence the defendant drew the inference that there was a "substantial and unique risk to Rich caused by [the defendant's] conduct"); *Houck v. W. Corr. Inst.*, No. GJH-17-2801, 2019 WL 1002416, at *6 (D. Md. Feb. 28, 2019) (dismissing deliberate indifference claim because plaintiff only alleged harassment by his cellmate and asked that the cellmate "be moved because he feared for his own safety" but did not show defendant's actual knowledge; noting the plaintiff  "had claimed no incidents with [cellmate], had a history of repeated requests for being housed by himself, and [plaintiff and his cellmate] were not documented enemies"); *Gabriel v. DeVore*, No. JKB-16-471, 2017 WL 371801, at *9 (D. Md. Jan. 26, 2017) (granting summary judgment to prison officials on plaintiff's claim of failure to protect from repeated assaults where "there was nothing other than plaintiff's 'own say-so' that he was being threatened" and there was evidence defendants "had no knowledge of any such threats"). *Cf. Murrill v. Merritt*, No. DKC-17-2255, 2022 WL 4080308, at *14 (D.

Md. Sept. 6, 2022) (denying summary judgment in part on failure to protect claims because jury could find plaintiff notified defendants of a serious risk by saying his cellmate "was a dangerous gang member who might kill him" and attempting "to file grievances stating the same").

Officer Andoh's motion for summary judgment is granted because Hammock has not met his burden of establishing a genuine dispute of material fact that Officer Andoh knew of and disregarded an excessive risk to Hammock's safety.

### IV. Motion for Appointment of Counsel

Hammock again requests court-appointed counsel. ECF 66. A federal district court judge has the discretion under 28 U.S.C. § 1915(e)(1) to appoint counsel in civil cases, but only if an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The Court denied Hammock's earlier motions to appoint counsel because he had not identified any exceptional circumstances. ECF 31, 32, 35, 45. He still has not, and his case is now closed. Accordingly, the motion is denied.

### V. Conclusion

For the foregoing reasons, defendant Officer Andoh is entitled to summary judgment. Plaintiff's request for court-appointed counsel is denied. A separate order follows.

September 19, 2022  
Date

Deborah L. Boardman  
United States District Judge