IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TERRENCE EDWARD HAMMOCK,** | * | |
| Plaintiff | * | |
| v. | * | Civ. No. DLB-21-796 |
| **OFFICER PHILLIP ANDOH,** | * | |
| Defendant | * | |

**MEMORANDUM OPINION**

Terrence Edward Hammock, a state inmate, filed a civil rights action under 28 U.S.C. § 1983 against correctional officers at the Baltimore County Detention Center alleging they failed to protect him from another inmate who assaulted him while Hammock was a pretrial detainee. Pending before the Court is Officer Phillip Andoh's motion for summary judgment. For the reasons below, Andoh's motion is denied. Hammock's motion for appointment of counsel is granted.

**I.    Background**

Hammock and his cellmate, Royal Quinn, fought inside their cell on March 8, 2021. At the time of the incident, Hammock was a pretrial detainee at the Baltimore County Detention Center.

Hammock alleges that Quinn hit him first and injured him by punching him in the eye "real hard." ECF 1, at 2–3. He was sent to the Johns Hopkins Hospital Wilmer Eye Clinic "via non emergent transportation for further evaluation" and diagnosed with a closed fracture of the left eye orbit. ECF 23-4, at 2.

According to Hammock, the conflict between him and his cellmate stemmed from Quinn being "disrespectful" by "smoking weed [and] cigarettes in the cell," which triggered Hammock's

asthma and required Hammock to have breathing treatments. ECF 1, at 2–3; ECF 57, at 2.[1] Hammock states that he originally told Andoh and several other correctional officers at the facility about his conflict with Quinn three weeks before Quinn assaulted him. ECF 34, at 1 ("[T]he defendants were informed by Plaintiff that his life was in danger, he fear[ed] for his life, and that him and his cellmate Royal Quinn do not get alon[g], and asked the Defendants around 3 weeks ago can they move him or Royal Quinn to another cell away from each other[.]"). Later, when Andoh was escorting Hammock to the medical unit for an asthma treatment, Hammock "informed Officer Ando[h] again" that Quinn's presence in his cell made him "fear for his life." *Id.* at 1–2. Hammock states that he told Andoh that "h[e] and his cellmate d[id] not get alon[g], that he want[ed] to be moved that night, that he wanted to see the supervisor about the matter and all the smoking." *Id.* Hammock further states that he told Andoh that his "life was in danger and that [he] fear[ed] that [his] cellmate Royal Quinn would attack [him], because [they] had problems and didn't get alon[g]" and they "keep arguing." ECF 57, at 1, 2.

Hammock recalls that Andoh told him he would take him to see a supervisor about the issue after Hammock was seen by medical staff, but then Andoh changed his mind and did not

---

[1] The Court credits Hammock's statements in his oppositions to Andoh's motions for summary judgment, ECF 57 and ECF 34, as evidence. At the top of the first page in ECF 57, Hammock attests: "All information herein is true." ECF 57, at 1. In ECF 34, Hammock states "that all the information herein is true to the best of his knowledge and belief." ECF 34, at 6. Though Hammock's attestations do not state that he makes his statements under penalty of perjury, the Court liberally construes Hammock's pro se filings as attestations made under oath and subject to the penalties of perjury. *See Folse v. Hoffman*, 122 F.4th 80, 84 (4th Cir. 2024) ("[T]rial courts are encouraged to liberally treat procedural errors made by *pro se* litigants." (alteration in original) (quoting *Bauer v. Comm'r*, 97 F.3d 45, 49 (4th Cir. 1996))); *see also Forbes v. A.S.G.D.C.*, No. 0:24-cv-1054, 2025 WL 1758974, at *2 (D.S.C. June 26, 2025) (considering pro se plaintiff's "affidavit," even though it was "missing a declaration under penalty of perjury and many other procedural formalities," because plaintiff "labeled his submission as an affidavit and swore to the veracity of its content").

take him to see a supervisor because Andoh's shift was ending and he wanted to go home. ECF 34, at 2; ECF 57, at 3.

Hammock also asserts that "all the Defendants know that inmate Royal Quinn is a known trouble maker" who is "always disrespecting correctional officers and other inmates" and who "stays in fights with other inmates." ECF 34, at 4–5. He insists the defendants knew Quinn's history of assaulting another inmate, Bruce Ware, before Quinn assaulted Hammock. *Id.* at 5. Hammock states that an officer had to use mace on Quinn to stop the assault because Quinn was "out of control," and Ware filed a § 1983 complaint based on the incident. *Id.* Hammock states that he has personal knowledge of the Ware incident because he "witness[ed] the whole thing from the beginning to the end." *Id.*

Andoh's recollection of events is different. In his affidavit, Andoh states that he "recall[s] escorting Mr. Hammock to get medical treatment for asthma" but "do[es] not recall whether this occurred before or after Mr. Hammock's altercation with Royal Quinn." ECF 54-1, ¶ 6. Andoh recalls that, as they were leaving the elevator after the treatment, Hammock said he "wanted to speak to a supervisor." *Id*. ¶ 7. Andoh contacted his supervisor, whose office was near the elevator. *Id*. ¶ 8. The supervisor "asked Mr. Hammock what he wished to speak with him about and Mr. Hammock would not give an answer." *Id*. Andoh encouraged Hammock to speak, "but he refused." *Id*. ¶ 9. Andoh then escorted Hammock to his cell, and Hammock "entered his cell willingly" without ever "ask[ing] [Andoh] to move him from his cell because he was not getting along with his cellmate or that he was in fear for his safety." *Id*. ¶¶ 10–11. Andoh also states that Hammock never asked for or gave him a form requesting to move cells. *Id.* ¶ 12. Andoh insists that, if Hammock had told him he was not getting along with his cellmate, Andoh would have advised his supervisor and Hammock would have received a form to request a move. *Id*. ¶ 13. Hammock

3

insists that, under the circumstances, he did not need to fill out a form to request to move cells because he told Andoh he feared for his safety. ECF 57, at 4. Hammock asserts he had been moved to another cell in the past after telling an officer he feared for his safety. *Id.* Additionally, Andoh states that if Hammock had told him he feared for his safety, Andoh "would have informed [his] supervisor and [Hammock] would immediately be moved to safe temporary housing." ECF 54-1, ¶ 14.

Hammock filed an unverified complaint against his assailant Quinn, Andoh, and several other officers. ECF 1. Hammock alleged the officers violated his Fourteenth Amendment rights by failing to protect Hammock from harm. *Id.* at 2–4. The Court granted summary judgment to all defendants except Andoh and denied Andoh's motion for summary judgment. *Hammock v. Watts*, No. DLB-21-796, 2021 WL 5448735, at *6 (D. Md. Nov. 19, 2021). As to Andoh, the Court found a genuine dispute of material fact about whether he knew that Quinn posed a substantial risk of injury to Hammock. *Id.* at *4. Andoh then filed a response to Hammock's failure to protect claim, ECF 54, which the Court construed as a motion for summary judgment, *Hammock v. Andoh*, No. DLB-21-796, 2022 WL 4316274, at *1 (D. Md. Sept. 19, 2022).

The Court granted summary judgment to Andoh. In accordance with then-existing Fourth Circuit law, the Court applied the two-part test for deliberate indifference claims under the Eighth Amendment set forth in *Farmer v. Brennan*, 511 U.S. 825 (1994). *Hammock*, 2022 WL 4316274, at *3 (citing *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302–03 (4th Cir. 2004) (analyzing pretrial detainee's deliberate indifference claim under *Farmer* standard)). To meet the *Farmer* standard, a plaintiff must show that the alleged deprivation is "objectively, 'sufficiently serious'" *and* that the official in question had a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S 294, 297, 298 (1991)). The second part of the test—the

4

subjective element—requires the plaintiff to show that the official was "aware of facts from which the inference could be drawn that a substantial risk of harm exists" and that the officer actually "dr[ew] the inference." *Id.* at 837. Applying the *Farmer* test for a deliberate indifference claim, the Court found that although Hammock's eye injury was objectively serious, Hammock had not produced evidence to prove the subjective element of the test—Andoh's state of mind. *Hammock*, 2022 WL 4316274, at *4. Hammock appealed to the Fourth Circuit.

While Hammock's appeal was pending, the Fourth Circuit decided *Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023). *Short* eliminated the subjective element for deliberate indifference claims brought by pretrial detainees under the Fourteenth Amendment. *Id.* at 611. The Court found that the subjective test was "irreconcilable" with *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), which held that, to state a Fourteenth Amendment due process claim for excessive force, a pretrial detainee need only assert that the officer used *objectively* unreasonable force. *Short*, 87 F.4th at 611 (discussing *Kingsley*, 576 U.S. at 396–97). Because *Kingsley* "upends the assumption that Fourteenth Amendment Due Process Clause claims should be treated the same as Eighth Amendment claims," "the heightened, subjective Eighth Amendment deliberate indifference standard does not extend to Fourteenth Amendment cases." *Id.* at 608–09. After *Short*, a pretrial detainee must show only "that the defendant's action or inaction was . . . 'objectively unreasonable.'" *Id.* at 611 (quoting *Kingsley*, 576 U.S. at 397).

In light of *Short*, the Fourth Circuit remanded this case to allow the Court to apply *Short*'s new standard for Fourteenth Amendment claims. *Hammock v. Andoh*, No. 22-7159, 2024 WL 33694, at *1 (4th Cir. Jan. 3, 2024). As the Fourth Circuit noted, this Court had granted summary judgment to Andoh because Hammock did not produce evidence in support of the subjective element of a deliberate indifference claim. *Id*. On remand, Andoh renewed his motion for summary

5

judgment. ECF 96. Hammock filed two letters in opposition. ECF 98 & 99. Andoh did not file a reply, and the time for doing so has passed. *See* Loc. R. 105.2(a) (D. Md. 2025). In the meantime, Hammock filed a motion for a default judgment and to hold Andoh in contempt, ECF 97, which the Court denied, ECF 104. Hammock also filed several motions for appointment of counsel, which remain pending. ECF 101, 103, & 105. Andoh has not responded to Hammock's motions for appointment of counsel. A hearing is not necessary to resolve any of the pending motions. *See* Loc. R. 105.6 (D. Md. 2025).

**II.     Standard of Review**

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 252. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (citing *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters*

*Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)). The Court construes pro se filings liberally. *See Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023). Still, the "the 'special judicial solicitude' with which a district court should view . . . pro se [filings] does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) (alteration in original) (quoting *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)). To deny summary judgment, the Court still must find a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a).

### III. Discussion

"The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of . . . inmates." *Id.* (alteration in original) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The Due Process Clause of the Fourteenth Amendment extends the protections afforded convicted prisoners under the Eighth Amendment to pretrial detainees. *See Kingsley*, 576 U.S. at 400–01; *Michelson v. Coon*, No. 20-6480, 2021 WL 2981501, at *2 (4th Cir. July 25, 2021) ("[B]ecause a state has no authority to

punish pretrial detainees at all, the right of a pretrial detainee to be protected from violence while incarcerated falls under the Due Process Clause of the Fourteenth Amendment.").

To prevail on a failure to protect claim under the Fourteenth Amendment, a detainee must prove two elements. First, the detainee must establish that the defendant officer exposed him "to an objectively 'substantial risk of serious harm.'" *Younger v. Crowder*, 79 F.4th 373, 382 (4th Cir. 2023) (quoting *Farmer*, 511 U.S. at 834). On this element, the Court must "assess whether society considers the risk that the [detainee] complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Second, the detainee must show the defendant officer's "deliberate indifference to a serious risk of harm on the purely objective basis that the 'governmental action' [that the plaintiff challenges] is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Short*, 87 F.4th at 611 (quoting *Kingsley*, 576 U.S. at 398). To meet the second prong, the detainee must show "that the defendant's action or inaction was . . . 'objectively unreasonable,' . . . that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly." *Id.* (quoting *Kingsley*, 576 U.S. at 397). "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Farmer*, 511 U.S. at 836). It is not enough, however, "for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611–12.

Applying the *Short* standard here, the Court finds that Hammock's failure to protect claim under the Fourth Amendment survives summary judgment. On the first element, there is no dispute that the injury to Hammock's eye caused by Quinn was objectively serious. On the second

element—whether Hammock can show that Andoh acted objectively unreasonably in his disregard of the risk to Hammock's safety—there is a genuine dispute of material fact.

Hammock has submitted evidence that he told Andoh about his fear that Quinn would harm him at least twice. Hammock attested that he told "the Defendants," including Andoh, that he had problems with Quinn and "fear[ed] for his life." ECF 34, at 1. He asked the defendants to move him or Quinn to a different cell because they "do not get alon[g]" to the point that Hammock's "life was in danger." *Id.* Hammock attests that he then personally spoke with Andoh about the matter. According to Hammock, Quinn smoked inside their shared cell, which caused Hammock's asthma to flare and the cellmates to argue. Andoh escorted Hammock to the facility's medical unit to receive asthma treatment, which Hammock told Andoh he needed because of Quinn's smoking. Hammock says that, while Andoh was escorting him to the medical unit, he told Andoh a second time that he "fear[ed] for his life, him and his cellmate do not get alon[g], that he want[ed] to be moved that night, that he wanted to see the supervisor about the matter and all the smoking." ECF 34, at 1–2. He also told Andoh that he feared Quinn "would try to attack [him], because [they] keep arguing." ECF 57, at 2.

Andoh has a different recollection of the events. Andoh swears that "[a]t no point did Mr. Hammock ask me to move him from his cell because he was not getting along with his cellmate or that he was in fear for his safety." ECF 54-1, ¶ 11. Yet Andoh concedes that he would have alerted a supervisor about Hammock's fear of Quinn if Andoh had been aware of it. In his affidavit, Andoh attests: "If Mr. Hammock had told me, [sic] he was in fear for his safety I would have informed my supervisor and he would immediately be moved to safe temporary housing and notification would be made to Classification." *Id.* ¶ 14.

9

When the Court assessed this evidence under the pre-*Short* standard, it was not enough to show that Andoh should have known that Hammock was in danger and disregarded the danger. *See Hammock*, 2024 WL 33694, at *1. The outcome of the Court's analysis is different when the Court considers what Andoh should have known, as opposed to what he knew.

Accepting as true the facts as Hammock recalls them and drawing all inferences in his favor, the Court finds that a reasonable jury could find that Andoh should have known about the risk that Quinn would assault Hammock if Hammock returned to their shared cell and that Andoh did not act objectively reasonably when he disregarded Hammock's complaints, refused to let Hammock speak with a supervisor, and returned him to the cell he shared with Quinn. *See Cox v. Quinn*, 828 F.3d 227, 236–37 (4th Cir. 2016) (concluding that correctional officers were "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]'" when the plaintiff "repeatedly informed the [officers] that he feared for his safety and wished either to be moved from the pod or to have the other inmates moved" (quoting *Farmer*, 511 U.S. at 837)). Andoh's statement that "If Mr. Hammock had told me, [sic] he was in fear for his safety I would have informed my supervisor and he would immediately be moved to safe temporary housing and notification would be made to Classification," ECF 54-1, ¶ 14, confirms that an objectively reasonable officer would have tried to protect Hammock if, in fact, Hammock had told the officer he feared for his safety.

Andoh's motion for summary judgment on Hammock's failure to protect claim is denied.

Hammock requests appointment of counsel. "[D]istrict courts have discretion to appoint counsel in civil cases and abuse that discretion by declining to do so where the case of an indigent person presents exceptional circumstances." *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024) (citation and quotations omitted). Exceptional circumstances exist if (1) plaintiff has a

"colorable claim" and (2) considering the claim's objective complexity and his subjective abilities, plaintiff "lacks the capacity to present it." *Id.* (citation and quotations omitted). Hammock has a colorable failure to protect claim, and he does not have the capacity to present it. The Court finds exceptional circumstances warrant the appointment of an attorney to represent him under 28 U.S.C. § 1915(e)(1).

### IV. Conclusion

Andoh's response to Hammock's failure to protect claim, ECF 54, construed as a motion for summary judgment, is denied. Hammock's motion for appointment of counsel, ECF 101, is granted, and his subsequent two motions for appointment of counsel, ECF 103 & 105, are denied as moot. A separate Order follows.

Date: August 19, 2025

Deborah L. Boardman
United States District Judge